IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01027-CMA-MEH

PAUL W. SPENCE,

    Plaintiff,

v.

LOUIS CABILING, MD, DOC,

    Defendant.

_____

# RECOMMENDATION ON MOTION TO DISMISS
_____

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court is Defendant's Motion to Dismiss Amended Prisoner Complaint (Doc. 31) [filed October 17, 2011; docket #32]. The motion is referred to this Court for recommendation. (Docket #34.) The matter is fully briefed and oral argument would not materially assist the Court in its adjudication of the motion. Although the Court is not persuaded that Plaintiff's claims are barred by the applicable statute of limitations, the Court does find that Defendant is entitled to both sovereign and qualified immunity as described in greater detail below. For the following reasons based on the entire record herein, the Court **RECOMMENDS** Defendant's motion be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the

**BACKGROUND**

Plaintiff initiated this lawsuit *pro se* on April 18, 2011. (Docket #1.) Although Plaintiff was initially incarcerated at Crowley County Correctional Facility, he is now housed at the Fremont Correctional Facility where he remains in the custody of the Colorado Department of Corrections ("CDOC"). (Docket #9.)

Upon initial review of Plaintiff's original complaint, Magistrate Judge Boland directed Plaintiff to file an amended complaint within thirty days of the order. (Docket #7.) At Plaintiff's request, Magistrate Judge Boland extended the deadline through and including June 15, 2011. (Docket #10.) Plaintiff filed an "amended complaint" on June 16, 2011. (Docket #11.) The following day, Judge Babcock issued an order dismissing the CDOC and Aristedes Zavaras as defendants. (Docket #12.) Notably, Judge Babcock's order did not recognize the "amended complaint" as filed. (*See id.*) The remaining defendant, Dr. Cabiling, filed a motion to dismiss the amended complaint on September 6, 2011. (Docket #19.) However, in light of Judge Babcock's order, the Court determined that the "amended complaint" was not the operative pleading and denied Defendant's motion to dismiss as moot. (Docket #30.) The Court directed Plaintiff to file a second amended complaint on or before October 3, 2011. (Docket #29.) Consistent with the Court's order, Plaintiff filed a second amended complaint against Defendant Dr. Cabiling on September 30, 2011. (Docket #31.)

Plaintiff's second amended complaint arises from medical treatment he received from Defendant after he slipped in a puddle of water and injured his left knee and hip. (Docket #31 at 3.)

---

Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

The accident occurred on August 28, 2007, and Plaintiff met with Defendant several days later for treatment. (*Id.*) During this appointment, Plaintiff allegedly informed Defendant of swelling, shaking, and continuous pain up and down his leg. (*Id.* at 4.) As a result of the pain, Plaintiff told Defendant that he was unable to wear a sock on his left foot, and that he struggled with sleeping, walking, showering, sitting, and standing. (*Id.*) Plaintiff also indicated that he was losing weight. (*Id.*) Rather than performing a physical examination, Defendant allegedly laughed at Plaintiff, stated that he did not see any swelling, and told Plaintiff that "losing weight is a good thing." (*Id.*) Ultimately, Defendant diagnosed Plaintiff with arthritis and prescribed muscle relaxants and Ibuprofen accordingly. (*Id.* at 3.)

Plaintiff returned for medical treatment on March 26, 2008, after suffering further complications with his knee. (*Id.* at 4.) X-rays taken at the March 26, 2008, exam revealed that Plaintiff's knee cap was broken, but they did not show any injury to Plaintiffs's hip. (*Id.* at 3.) After complaining to the medical staff about his injuries and submitting a series of medical kites, Plaintiff was eventually taken to Pueblo State Hospital on June 29, 2008, to receive treatment for his knee. (*Id.* at 4.) Upon his return from the hospital, Plaintiff continued to seek treatment from Defendant for his hip. (*Id.*) Despite Plaintiff's claim of constant hip pain and numbness in his foot, Defendant maintained his original diagnosis of arthritis and prescribed "Neurotins" and "Ultrains" in place of Robaxin. (*Id.*) On December 16, 2009, Plaintiff saw a specialist concerning his hip. (*Id.* at 5.) According to the specialist, who is now allegedly deceased, Plaintiff's hip was damaged and needed to be replaced. (*Id.*) Plaintiff claims another specialist at Denver Health Hospital reached the same conclusion. (*Id.*) On February 2, 2011, Plaintiff underwent hip replacement surgery and now claims he is permanently disabled. (*Id.* at 6.)

Based on the above facts, Plaintiff's second amended complaint asserts two causes of action. In Claim One, Plaintiff alleges that Defendant acted with deliberate indifference in violation of the Eighth Amendment by failing to properly treat and diagnose Plaintiff's leg and hip injuries. (*Id.* at 4-5.) In Claim Two, Plaintiff argues that Defendant violated the Fourteenth Amendment by depriving Plaintiff of a liberty interest without due process of law. (*Id.* at 6.) As relief, Plaintiff seeks a declaration that Defendant violated his constitutional rights, an unspecified amount of compensatory and punitive damages, and that "Defendant take[] full responsibility for future complications with [Plaintiff's] left hip and balljoint." (*Id.* at 8.)

Defendant responded to Plaintiff's second amended complaint by filing the present motion to dismiss. (Docket #32.) Defendant argues that: 1) Plaintiff's claims against him in his official capacity are barred by the Eleventh Amendment; 2) Plaintiff's claims are barred the statute of limitations; 3) Plaintiff fails to state a cognizable Eighth Amendment claim; 4) Plaintiff fails to state a cognizable Fourteenth Amendment claim; and 5) Defendant is entitled to qualified immunity.

The Court will begin by determining whether Plaintiff's claims are barred by the statute of limitations. Next, the Court will address the immunity defenses, determining first whether Defendant is entitled to sovereign immunity, and second, whether Defendant is entitled to qualified immunity. Because the qualified immunity inquiry includes an evaluation of the merits, the Court will address Defendant's third, fourth, and fifth arguments together.

## STANDARDS OF REVIEW

### I.     Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not

4

supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

**II.     Dismissal Under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906,

909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

### III. Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 1949–51. Second, the

Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

**I.     Statute of Limitations**

Defendant argues that Plaintiff's claims are barred by the statute of limitations and should, therefore, be dismissed. In response, Plaintiff contends that the statute of limitations should be tolled because his ability to file suit was impeded by the Prison Litigation Reform Act ("PLRA"). In line with these arguments, the Court will first address when, if at all, the statute of limitations period expired, and second, whether tolling is warranted.

*A.     Statute of Limitations Period*

Although section 1983 does not establish its own statute of limitations, "the statute of

limitations for §1983 actions brought in Colorado is two years from the time the cause of action accrued." *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)). Because 1983 suits assert a federal cause of action, federal law controls when the cause of action accrues. *See Baker v. Board of Regents of the State of Kansas,* 991 F.2d 628, 632 (10th Cir. 1993); *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987). "In general, under the federal discovery rule, claims accrue and '[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Id.* (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)).

In *Alexander v. Oklahoma*, the Tenth Circuit drew a distinction between a plaintiff's awareness of his physical injuries and his knowledge of a cause of action. *See id.* at 1215-16. While a plaintiff need not have conclusive evidence of the cause of the injury to trigger the statute of limitations, he must have sufficient facts to put a reasonable person on notice that wrongful conduct caused the harm. *Id.* at 1216. It is a plaintiff's responsibility to use "reasonable diligence" in seeking to discover those facts. *Id.*

Defendant argues that the Court should rely on the dates on which Plaintiff received treatment to determine when Plaintiff knew or should have known of his injuries. (Docket #32 at 5-6.) However, this reading confuses Plaintiff's awareness of his physical injuries with his knowledge of the *constitutional* injuries he asserts in this lawsuit. In short, Plaintiff may have been keenly aware of the pain in his knee and hip on the days he was examined by Defendant, but may

not have had sufficient facts to put a reasonable person on notice of Defendant's wrongful conduct until a later date. The federal discovery rule requires the Court to consider the latter in determining when Plaintiff's cause of action accrued. *See Alexander*, 382 F.3d at 1215.

Throughout Plaintiff's amended complaint and in both of his responses to Defendant's motion to dismiss, Plaintiff describes his continuous complaints to kitchen staff, prison staff, and Defendant regarding his pain and inability to walk. In light of the pain, Plaintiff suspected something was wrong: "[b]ecause of all the complications I was suffering with, I knew it was more than arthritis." (Docket #43 at 6.) Plaintiff attributed the missed diagnosis to Defendant, as "[he] told Dr. Cabiling on numerous occasions that there was something else wrong and [that] he was full of - - - -." (Docket #31 at 5.) In addition to Plaintiff's own belief that Defendant was not providing adequate treatment, Plaintiff also received notice from other medical staff that a constitutional violation may have occurred. (*See id.* at 6.) In particular, Plaintiff cites a "one-on-one session" with Judy Brizendine in which Ms. Brizendine allegedly informed him that Defendant knew of his fracture at the time Plaintiff received knee surgery. (*Id.*) Although Plaintiff concedes the above facts, the record does not indicate the dates on which these conversations occurred. These details may be readily discoverable, but they are not evident from the record thus far.

In *Fratus*, the Tenth Circuit expressly rejected a District Court's dismissal of a §1983 claim based on the statute of limitations because the date of accrual was not clear from the facts. *See Fratus*, 49 F.3d. at 676. Like the Court in *Fratus*, this Court finds that it is not possible with the present record to place Plaintiff's claims "definitively inside or outside the statute of limitations." *See id.* Accordingly, the Court recommends the District Court find that Plaintiff's claims cannot be dismissed under the statute of limitations at this stage in the litigation. *See id.*

### B. *Tolling*

Mindful that the District Court may reach a different conclusion regarding the accrual of Plaintiff's claims, the Court also considers whether the statute of limitations should be tolled.

"In a § 1983 action, state law governs issues regarding the statute of limitations and tolling[.]" *Braxton*, 614 at 1159. Under Colorado law, the plaintiff bears the burden of demonstrating that tolling is warranted. *Id.* Although "the statute of limitations is not automatically tolled whenever an individual pursues administrative remedies," Colorado law recognizes that equity may require tolling in some instances. *Id.* at 1161. Equitable tolling is, however, "limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring a claim or truly extraordinary circumstances prevent the plaintiff from filing his or her claim despite diligent efforts." *Id.* (quotations omitted). Underlying these exceptions is the principle that "it is unfair to penalize the plaintiff for circumstances outside his or her control." *Id.* Consequently, the PLRA's exhaustion requirements may constitute an "extraordinary circumstance" provided a plaintiff has made a good-faith effort to pursue his or her claims when possible. *Id.* at 1161-62.

In this case, Plaintiff argues that the statute of limitations should be tolled because delays within the prison system prevented him from filing this lawsuit. Specifically, Plaintiff asserts that he did not receive a copy of his Step 3 grievance until April 2011, and thus, did not know whether he had properly exhausted his administrative remedies. (Docket #37 at 12.) In support of this contention, Plaintiff refers to a letter dated April 7, 2011, and addressed to his former case manager, Mrs. Lucero. (Docket #8, 3.) In the letter, Plaintiff states that he filed a Step 3 grievance but did not receive a copy of the answer or reply. (*Id.*) Notably, Plaintiff explains his request by indicating his intent to file a lawsuit. (*Id.*)

Taking these facts as true, it appears that Plaintiff waited to receive a response to his Step 3 grievance before filing this lawsuit. In view of the PLRA, Plaintiff's desire for a response was not unreasonable, as failure to exhaust would have barred his claims. However, it is not clear why Plaintiff waited over a year after filing his Step 3 grievance before inquiring, either formally or informally, about its resolution. While Plaintiff makes much of the CDOC's delay, he says little regarding his own. Because Plaintiff has failed to show that he made a good faith effort to pursue his claims, the Court recommends the District Court find that Plaintiff is not entitled to equitable tolling.

As described above, it is the Court's view that the accrual date of Plaintiff's claims cannot be conclusively determined at this time. However, if the District Court finds that the statute of limitations began to run prior to April 18, 2009, the Court recommends dismissing Plaintiff's claims because Plaintiff has not met his burden of demonstrating that the statute of limitations should be tolled. Because the Court is not persuaded that the statute of limitations bars Plaintiff's claims, the Court will proceed to analyze whether dismissal is warranted on other grounds.

**II.     Sovereign Immunity**

It is unclear from the second amended complaint whether Defendant is sued in his individual or official capacity; however, Plaintiff's first response [docket #37] suggests that Defendant is sued in his official capacity for prospective injunctive and declaratory relief.[2] Defendant argues that

---

[2]The pages of Plaintiff's first response [docket #37] appear to be out of order. Plaintiff's first heading addressing sovereign immunity begins on page 15 of the response. The last sentence of page 15 is incomplete, as it states "....the [relevant] Defendant is sued..." However, page 14 begins with the logical extension of the sentence from page 15, reading "...in his official capacity for prospective injunctive relief and declaratory relief per (sic) Ex Parte Young doctrine." Accordingly, the Court reads the first sentence on page 14 as if it followed the last sentence on page 15.

11

Plaintiff's official capacity claims are barred by the Eleventh Amendment.

The Court agrees that Defendant is not subject to suit in his official capacity. Claims against state officials in their official capacities are essentially claims against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir.1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785–86 (1991). Section 1983 did not abrogate the Eleventh Amendment, nor does it provide a jurisdictional basis for suit against a state official acting in his or her official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

In this case, Plaintiff seeks both monetary damages and a "declar[ation] that the acts and omissions described [in the amended complaint] violated [his] rights under the Constitution and laws

of the United States." (Docket #31 at 8.) Plaintiff also asks "Defendant [to] take[] full responsibility for future complications with [Plaintiff's] left hip and balljoint." (*Id.*) Because it is unclear to the Court what prospective "responsibility" entails, the Court construes Plaintiff's statement as a request for a declaration that Defendant is at fault for Plaintiff's future suffering. In essence, Plaintiff seeks a declaration that Defendant has violated his rights in the past, which is not permitted pursuant to *Young*. Consequently, the Court finds that any claims for monetary damages or declaratory relief brought against Defendant in his official capacity are barred by the Eleventh Amendment. The Court recommends that the District Court grant Defendant's motion in this regard and dismiss Plaintiff's claims for monetary and declaratory relief against Defendant in his official capacity.

**III.     Qualified Immunity**

Defendant asserts that he is entitled to qualified immunity for claims against him in his individual capacity. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine the

elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

With respect to Plaintiff's Eighth Amendment claim, the Court will begin by determining whether Plaintiff has plausibly established a violation of his rights, and if so, whether those rights were clearly established at the time of the violation. Because Plaintiff's due process argument is more creative, the Court will focus is analysis on the clarity of legal standard under which Plaintiff brings his Fourteenth Amendment claim.

### A.     *Eighth Amendment Claim*

In Claim One, Plaintiff alleges that Defendant violated the Eighth Amendment by failing to properly diagnose and treat his leg and hip injuries. Specifically, Plaintiff contends that Defendant's unwavering arthritis diagnosis reflects Defendant's deliberate indifference to Plaintiff's serious medical need for a more thorough evaluation and treatment regime. (*See* docket #31 at 4-5.)

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials

14

"have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). The subjective component is met if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

Beginning with the objective component, Plaintiff alleges that his hip condition constitutes a serious medical need. (Docket #31 at 4.) While the nature of Plaintiff's hip condition is not entirely clear from the record, both degenerative hip condition and arthritis of the hip have been found to constitute sufficiently serious medical conditions for purposes of the Eighth Amendment. *See, e.g. Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994) (finding that a plaintiff with a degenerative hip condition who experienced great pain while walking had serious medical needs); *Cain v. Huff*, 117 F.3d 1420 (table), 1997 WL 377029, at *3 (6th Cir. 1997) (finding that a plaintiff suffering from advanced arthritis of the hip had serious medical needs). In this case, Plaintiff claims he experienced constant and severe pain in his hip from August 2007 through February 2011, and

15

that such pain inhibited him from walking. (Dockets ##31 at 4-6; 43, 5.) Ultimately, Plaintiff's hip became so damaged that he required and received a complete replacement. (Docket #31 at 5.) Based on these facts, the Court finds that Plaintiff has established a sufficiently serious medical need to meet the objective requirement of his Eighth Amendment claim.

With respect to the subjective component, Plaintiff must demonstrate that Defendant acted with deliberate indifference. As the Tenth Circuit established in *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir 1993), a difference of opinion between a prisoner and prison medical staff regarding the treatment or diagnosis of a medical condition does not constitute deliberate indifference. In the context of 1983 suits under the Eighth Amendment, a defendant is not required to show that he made a correct or even prudent decision in diagnosing or treating a plaintiff's medical condition. *Braxton v. Wyandotte County Sheriff's Dep't*, 205 F. App'x 791, 793 (10th Cir. 2006) ("inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not violate the Eighth Amendment.") "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

In *Self*, the Tenth Circuit held that the "subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his medical judgment." *Id.* at 1232. "[D]ecisions as to whether to consult a specialist or undertake additional medical testing" have traditionally fallen into this category. *Id.* Unless the need for additional medical treatment or a referral is obvious, a defendant's missed diagnosis or delayed referral is not actionable. *Id.* "Obviousness" may arise in cases where (1) a medical professional is aware of his inability to

provide adequate treatment but delays or refuses to provide a referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize it; or (3) a medical professional completely denies care despite recognizable symptoms which potentially create a medical emergency. *Id.*

In this case, Plaintiff asserts that Defendant "found out about [his] serious medical need [but] did nothing." (Docket #31 at 5.) This sweeping statement is not supported by the facts. Indeed, Plaintiff describes meeting with Defendant on several occasions to discuss his knee and hip pain. (*See id.* at 4-5.) Each time, Defendant reached the conclusion that Plaintiff was suffering from arthritis and prescribed medication to address the issue. (*Id.*) As Plaintiff's complaints continued, Defendant adjusted his prescriptions accordingly. (*Id.*) Thus, it is not the case that Defendant simply "did nothing."

While Plaintiff concedes that Defendant provided him with some degree of medical attention, he argues that Defendant should have conducted a more thorough examination and referred Plaintiff to an orthopedic specialist at an earlier time. As noted above, decisions of this nature traditionally fall within the scope of a physician's medical judgment and are, therefore, not actionable under the Eighth Amendment absent a showing of obviousness. *See Self*, 439 F.3d at 1232. Here, Plaintiff has not alleged that Defendant was unable to treat his condition or that Defendant "completely denied him care" in the face of emergency-like symptoms. Plaintiff has also failed to plausibly demonstrate that his actual medical condition was so obvious that even a lay person could have recognized it. Indeed, Plaintiff's ultimate diagnosis is unclear even now, as Plaintiff simply avers that his hip was damaged and required a replacement. (Docket #31 at 5.)

Based on the facts alleged by Plaintiff, it is clear that Defendant provided medical treatment

for Plaintiff's injuries and that he did so on a somewhat regular basis. (*See id.* at 3-6.)  Defendant's decision not to conduct further testing or to refer Plaintiff to a specialist at an earlier time was within his discretion as a medical provider, as it was not legally obvious at the time of Plaintiff's treatment that further action was necessary. At a minimum, Plaintiff has not demonstrated a clearly established constitutional mandate to provide more treatment than was given.  Therefore, the Court recommends the District Court find that Defendant is entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim, and that the District Court dismiss Plaintiff's Eighth Amendment claim accordingly.

      *B.      Due Process Claim*

In Claim Two, Plaintiff alleges that Defendant violated his right to due process under the Fourteenth Amendment.  Construing his claim liberally, Plaintiff appears to allege that Defendant's failure to provide him with adequate medical care deprived him of a liberty interest by rendering him permanently disabled.

In support of his claim, Plaintiff cites a line of Supreme Court decisions involving the constitutional fairness of various prison restrictions.  (*See* docket #31 at 8, citing *Wolff v. McDonnell*, 418 U.S. 539 (1974), *Sandin v. Conner*, 515 U.S. 472 (1995), and *Wilkenson v. Austin*, 545 U.S. 209 (2005).)  Unlike the present case, these cases involve deliberate decisions on the part of prison officials to alter the conditions of an inmate's confinement. *See Wolff*, 418 U.S. at 542, 543 (plaintiff challenged disciplinary proceedings used to revoke good-time credits); *Sandin*, 515 U.S. at 483-84 (plaintiff challenged 30-day placement in segregated confinement); *Wilkenson*, 545 U.S. at 213 (plaintiff challenged the process by which he was assigned to a "supermax"prison facility).  This distinction is significant insofar as Plaintiff has not alleged a deliberate decision on

the part of Defendant to change any aspect of Plaintiff's confinement. To the contrary, Plaintiff avers that Defendant "did nothing," or more realistically, that he did not do enough. (Docket #31 at 8.)

In *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986), the Supreme Court distinguished the deliberate decision of prison officials at issue in *Wolff v. McDonnell* from a prison official's hypothetically negligent action that produces the same result. ("We think the relevant action of the prison officials in [*Wolff v. McDonnell*] is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord him the procedural protections of the due process clause.") The *Daniels* court held that the due process protections of the Fourteenth Amendment are not triggered by a prison official's lack of due care. *Id.* "To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id* at 332.

In the wake of *Daniels*, other circuit courts have reached different conclusions regarding the required state of mind for a due process claim. *See Brown v. Montoya*, 662 F.3d 1152, 1170 (10th Cir. 2011) (comparing cases from the Third and Sixth Circuits in noting that some courts have required recklessness or gross negligence). However, "the Tenth Circuit *has not resolved this issue*." *Id*. (emphasis added). Thus, even if Plaintiff had alleged sufficient facts to support his assertion of deliberate indifference, it is not clearly established that such a mental state may give rise to cause of action under the due process clause. *See id*.

Because Plaintiff has failed to show a violation of his clearly established rights under the due process clause, the Court recommends the District Court find that Defendant is entitled to qualified immunity with respect to Claim Two and dismiss the claim accordingly.

## **CONCLUSION**

Although this Court does not find that Plaintiff's claims are barred by the applicable statute of limitations, the Court finds that Defendant is entitled to sovereign immunity for claims against him in his official capacity and entitled to qualified immunity with respect to Plaintiff's Eighth and Fourteenth Amendment claims. Accordingly, the Court RECOMMENDS Defendant's Motion to Dismiss Amended Prisoner Complaint (Doc. 31) [filed October 17, 2011; docket #32] be **GRANTED**, and that Plaintiff's claims be dismissed.

Dated and entered at Denver, Colorado, this 21st day of February, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge